UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

S.M., individually, and P.M., by his parent and next friend, S.M;
P.P., individually, and A.P., by his parent and next friend, P.P.,

                                        Plaintiffs,

        v.                                                      **DECISION AND ORDER**
                                                                09-CV-686S
                                                                09-CV-922S

Evans-Brant Central School District,

                                        Defendant.


# I.  INTRODUCTION

        This Court has combined for decision two actions by S.M. and P.P (parents of P.M.

and A.P., respectively) brought against Evans-Brant Central School District.[2] These actions

seek exclusively costs and attorney fees, as authorized by the Individuals with Disabilities

Education Improvement Act ("IDEA"), which provides that such fees are available to "a

prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B).

Having been granted relief at the administrative level on behalf of their disabled children,

both S.M. and P.P. now contend that they are "prevailing parties" and therefore ought to

be awarded fees and costs.

        Despite the Supreme Court's admonition that a fee request "should not result in a

second major litigation," Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941,

76 L. Ed. 2d 40 (1983), this Court has already resolved a motion to dismiss in each case

and, currently, there are *eight* pending motions in the combined cases. Each party has

---

[2]The Plaintiffs' full names have been abbreviated to protect their identity. See, e.g., C.B. v.
Pittsford Cent. Sch. Dist., No. 08-CV-6462 CJS, 2009 WL 2991564, at *5 (W.D.N.Y. Sept. 15, 2009) ("[I]n
a case such as the present one, the parent and child are permitted to proceed using only their initials 'as a
matter of course.'")

moved for summary judgment (Defendant has inexplicably so moved *twice*) and Plaintiffs have moved to strike that second summary judgment motion, resulting in nothing less than precisely what the Supreme Court hoped would not occur.

Nonetheless, the main dispute requires resolution, and many of the tangential motions are superfluous and can be disposed of with little or no discussion (none more so than Defendant's second motion for summary judgment, which does not appear to differ in any substantive manner from its first motion), enabling this Court to finally determine whether, and to what extent, Plaintiffs should be awarded attorney fees.

## II.  BACKGROUND

### A.     Statutory and Factual Background

The purpose of the IDEA to ensure that all disabled children receive a free and appropriate public education (commonly referred to as "FAPE") emphasizing "special education and related services designed to meet [the children's] unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).[3]  A key component in achieving this goal is the individualized education program, or "IEP," which is a written document jointly created annually by a team consisting of educators and the parents of the disabled child.  20 U.S.C. §§ 1401 (14), 1414(d).  In

---

[3]The IDEA defines a FAPE as

> special education and related services that–
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).

New York, that team is referred to as a Committee on Special Education, or a "CSE." N.Y. Educ. Law § 4402; 8 N.Y.C.R.R. § 200.3(a)(1). Under New York and federal education law, parents of disabled children who are dissatisfied with their children's IEP may request, under IDEA-mandated procedures, a review before an impartial hearing officer ("IHO") appointed by the relevant board of education. N.Y. Educ. Law. § 4404; see generally 20 U.S.C. § 1415(f) (describing requirements for impartial due-process hearing).

The parents here, dissatisfied with the IEPs and educational placement of their disabled children at Evans, both filed this type of complaint. After Evans received the complaint, the parties engaged in a required "resolution session," at which "the parents of the child discuss their complaint [] and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint." 20 U.S.C. § 1415(f)(1)(b). Following the meeting, Evans sent both parents a proposed settlement agreement, but the parents rejected the proposal and proceeded to hearings before IHOs.

At the hearings, Evans conceded the underlying defects with the students' IEPs. Its central argument, which it raises again here, was that there remained no justiciable controversy because it took steps to remedy the issues identified in the parents' complaint. The IHOs rejected that argument in both cases and went on to make various rulings.

As for P.P., on May 23, 2008, after the hearing, IHO Martin Kehoe III issued a "pendency" decision in Plaintiffs' favor. Like a preliminary injunction, it ordered Evans to provide certain educational services while the final decision was pending. Subsequently, on July 16, 2008, the IHO issued his final decision, determining that Defendant failed to provide A.P. with a FAPE for the 2007-08 school year.

In S.M.'s case, on June 2, 2008, again after the hearing, IHO Michael Lazan issued a decision in S.M. and P.M's favor, also determining that Evans failed to provide P.M. with appropriate educational programs and services for the 2007-2008 school year. Shortly thereafter, Evans appealed the IHO's decision to the State Review Officer of the New York State Education Department. See N.Y. Educ. Law. § 4404(2); see generally 20 U.S.C. § 1415(g) (describing requirements for appeal to state agency). Two months later, on August 25, 2008, the State Review Officer upheld the IHO's decision.

After these decisions, both Plaintiffs requested, outside of court, attorney fees and costs from Evans, as authorized by the IDEA. See 20 U.S.C. § 1415(i)(3)(B)(I). Evans denied those requests, prompting the current actions.

## B.   Procedural History

P.P. commenced this action by filing a complaint in this Court on October 28, 2009. On November 20, 2009, Evans moved to dismiss that complaint. This Court later denied that motion in all respects but one, finding in Evans' favor that P.P. could not recover attorney fees for meetings that occurred before July 16, 2008. (Docket No. 12.)

After discovery, Evans moved for summary judgment (Docket No. 42), and P.P. responded with an affidavit in opposition, indicating that he planned to file his own summary judgment motion. He did so on December 21, 2012. (Docket No. 52.) Thereafter, Evans filed a second motion for summary judgment, styled as a "cross-motion." (Docket No. 59.) P.P. then moved to strike that motion. (Docket No. 62.)

Briefing on those motions closed in February of 2013.

S.M's case followed a similar, but not identical, path. S.M. commenced this case on July 30, 2009, with an initial complaint. S.M. then filed an amended complaint on August

4

12, 2009. Evans moved to dismiss the amended complaint, and, on January 8, 2012, this Court denied that motion in all respects but one, finding in Evans' favor that P.M. should be dismissed as a plaintiff in his individual capacity. In that Decision, this Court also granted S.M. leave to filed a second amended complaint, which he did on January 12, 2012.

From there, the case took a familiar turn: Evans filed a motion for summary judgment (Docket No. 48); S.M. responded, indicating he would soon file his own motion; S.M. filed that motion (Docket No. 55); Evans filed another summary judgment motion (Docket No. 60); and S.M. moved to strike that motion (Docket No. 63).

Briefing on those motions also concluded in February of 2013, at which time this Court took the motions in each case under consideration.

## III. DISCUSSION

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact." A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of

5

evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).

****

Though there are a total of six summary judgment motions pending before the court (three in each case), there are but two related, and relatively straightforward, questions before this Court: Are Plaintiffs entitled to attorney fees? And if so, in what amount?

## B.    Plaintiffs' eligibility for attorney fees

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(I). Plaintiffs brought these tandem cases seeking such fees.[4] Defendant, however, raises various arguments in its motions for summary judgment contending that Plaintiffs should either not receive any fees, or should receive them in a severely reduced fashion. Each will be discussed in turn.

### 1.    Prevailing-Party Status

As noted, the IDEA provides that attorney fees are available to a "prevailing party." Evans first argues that Plaintiffs, including P.P., are not entitled to fees because they are

---

[4]This type of action – i.e., one exclusively for fees – is properly before this Court. <u>See</u> <u>S.W. ex rel. N.W. v. Bd. of Educ. of City of N.Y. (Dist. Two)</u>, 257 F. Supp. 2d 600, 602 (S.D.N.Y. 2003) (action brought in federal court seeking attorney fees exclusively), <i>aff'd</i>, <u>A.R. ex rel. R.V. v. New York City Dep't of Educ.</u>, 407 F.3d 65 (2d Cir. 2005).

6

not "prevailing parties."

This is a bewildering argument considering that this Court, on Evans' motion to dismiss, has already ruled – unequivocally – that P.P. is a prevailing party. See P.P. v. Evans-Brant Central  School District, 847 F. Supp. 2d 466, 469 (W.D.N.Y. 2012) ("[T]his Court finds that Evans' contention that Plaintiffs should not be considered 'prevailing parties' is without merit."). This Court finds no cause to revisit that ruling.

Although this issue was not raised in S.M.'s case on the motion to dismiss, the ruling is equally applicable.

A "prevailing party" is "one who has been awarded some relief by the court." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). It is well settled in this Circuit that a "plaintiff who receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a 'prevailing party,'" and that "he or she may therefore be entitled  to payment of attorneys' fees under the IDEA's fee-shifting provisions." A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 75 (2d Cir. 2005). In S.M.'s case, the IHO found:

> Given the violations here, including the failure to write appropriate goals, the failure to conduct an appropriate physical therapy evaluation, the failure to provide occupational therapy services, the failure to provide assistive technology services, the failure to provide speech and language services, the failure to provide behavioral interventions, and P.M.'s lack of progress for 2007-2008, the District has not shown that it has provided P.M. with a FAPE for 2007-2008.

(IHO Decision, June 2, 2008 at 20; Docket No. 55-9 of 09CV-686.) Thus, he ordered Evans to convene a meeting within 15 days to rewrite P.M.'s individual education plan, to provide

for additional physical, speech, and language therapy, and to provide a complete behavioral intervention plan. (Id. at 27.) On Evan's appeal, the State Review Officer affirmed those findings.

These rulings firmly establish that S.M. was a "prevailing party" at the administrative level. Evans argument that somehow S.M. was not "awarded some relief by the court" is plainly belied by the record, and it is flatly rejected. See Alegria ex rel. Alegria v. District of Columbia, 391 F.3d 262, 267 (D.C. Cir. 2004) (party who prevails at the administrative level is the "prevailing party" even if administrative decision is no more favorable than settlement offer); T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 476 (7th Cir. 2003); John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit, 318 F.3d 545, 557 (3d Cir. 2003).

### 2. Fee Arrangement

Evans next argues that the fee arrangement between Plaintiffs and their attorneys bars them from pursuing this action. The retainer agreement, signed by Plaintiffs, provides that Plaintiffs will not be responsible for any attorney fees and, in relevant part, that:

> I agree not to waive or otherwise impair your ability to pursue recovery of the total fees and costs incurred in connection herein from a defendant on the basis of my being a prevailing party. However, I further understand that if I should decide to waive or otherwise impair the ability to pursue recovery of fees and costs from a defendant, including doing so as part of a settlement, I shall be personally responsible for the full payment of all the fees and costs incurred in connection herein.

(Retainer Agreement, ¶ 4, attached as "Attachment No. 9"; Docket No. 51-6.)

### i. Obligation to Pay

Evans' first argument concerning the fee arrangement is that because the right to

recover fees under the IDEA belongs to the Plaintiffs – not the attorneys – and because Plaintiffs never undertook any real obligation to pay attorney's fees, "there is no basis for awarding them anything." (Def.'s Br. at 2; Docket No. 48-8 of 9-CV-686).

But Evans points to no authority suggesting that a plaintiff must first pay legal fees, or become liable for their payment, before the plaintiff can pursue an action to be awarded them under a fee-shifting statute.

It points to no authority presumably because the authority is to the contrary. The purpose of the fee-shifting provision of the IDEA is to "further ensure that children with disabilities receive 'free appropriate public education[s].'" A.R., 407 F.3d at 72. It is intended to "ease the financial burden on parents making claims" under the IDEA. T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 471 (7th Cir. 2003). To require that potential plaintiffs become actually liable for the fees associated with these cases would thus thwart the intended goal of the fee-shifting nature of the statute. See Dillery v. City of Sandusky, 398 F.3d 562, 572 (6th Cir. 2005) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)) ("Fee-shifting provisions are intended 'to promote vigorous enforcement' of laws by private plaintiffs regardless of their ability to pay for representation."). Indeed, discussing a similar fee-shifting statute, 42 U.S.C. § 1988, the Supreme Court has noted that "[w]hether or not a litigant agreed to pay a fee and in what amount is not decisive. . . . The criterion for the court is not what the parties agree but what is reasonable." Blanchard v. Bergeron, 489 U.S. 87, 92, 109 S. Ct. 939, 944, 103 L. Ed. 2d 67 (1989) (quoting Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 718 (5th Cir. 1974)). The Court went on, "And where there are lawyers or organizations that will take a plaintiff's case without compensation, *that fact does not bar the award of a reasonable*

9

*fee.*" Id. at 94.

Just like 42 U.S.C. § 1988,  20 U.S.C. § 1415(i)(3)(B) permits a prevailing party to seek a "reasonable fee." And, as the Supreme Court has found, that fee is not contingent on the agreement between the prevailing party and her attorney. Instead, it simply must be "reasonable." "No more and no less" is required. Id. at 93.

Understanding this bedrock principle, at least one court has gone so far as to sanction

an attorney for making the argument Evans advances here. In Samuels v. American Motor Sales Corp., the defendant argued "that because the fee contract between [Plaintiff] and his attorney did not obligate [Plaintiff] to make any payment beyond the initial $1,000 retainer fee, [Plaintiff] cannot recover more than $1,000 for his costs and expenses including attorney's fees under" the fee-shifting provision of the Magnuson–Moss Act. No. 87 C 7804, 1991 WL 355049, at *2 (N.D. Ill. Mar. 29, 1991). Analogizing the fee-shifting provision of the Mangnuson-Moss Act to those found in § 1988 and the Fair Debt Collections Practices Act (all of which permit recovery of a "reasonable fee"), the court rejected this "frivolous" argument and fined the attorney $200 for suggesting it.

Though this Court finds no fine to be necessary, it likewise rejects Evans' argument in this IDEA fee-shifting case.

ii.   *Rules of Professional Conduct*

Defendant's next fee-arrangement argument fares no better. Relying on the New York Rules of Professional Conduct, Evans argues that the fee arrangement between the plaintiffs and their attorneys is an unethical and impermissible attempt to force clients to forgo settlement (where, regardless of the outcome, no attorney fees are permitted) in lieu

of proceeding to a hearing (where, if successful, attorney fees are awardable). Accordingly, Evans argues, the plaintiffs should not be able to recover attorney fees.

But any violation of the New York Rules of Professional Conduct is not a matter for this Court, as "Defendant does not have standing to object to the fee arrangement between Plaintiff and her attorney." S.M. v. Taconic Hills Cent. Sch. Dist., No. 1:09-CV-1238 LEK/RFT, 2012 WL 3929889 (N.D.N.Y. Sept. 10, 2012) (citing Rozen v. Russ & Russ, P.C., 76 A.D.3d 965, 969, 908 N.Y.S.2d 217 (2d Dep't 2010); Wilson v. LaFontant, 240 A.D.2d 172, 173, 657 N.Y.S.2d 693 (1st Dep't 1997)).

Nor does this Court find, as Evans appears to suggest, that Plaintiffs' fee arrangement had the effect of intentionally protracting the litigation in this matter in an effort to acquire fees. It was the parents who decided to reject the settlement offer because, as S.M. avowed, "they were not close to acceptable." (S.M. Decl., ¶ 13; Docket No. 51-2 of 09-CV-686). Indeed, her "rejection of the District's settlement offers had nothing to do with any question about attorney's fees." (Id.) P.P. expressed a similar sentiment, calling the proposal "significantly unacceptable." (P.P. Decl., ¶ 13; Docket No. 46-2 of 09-CV-922.)

Finally, this Court will not find, as Evans urges, that notions of equity warrant a preclusion of fees in this case. Again, Evans' argument is that Plaintiffs were given an inequitable choice: proceed to a hearing or become responsible for all the attorney fees. But, even if this consideration can, or should, be a factor in an IDEA award of attorneys fees, a fair reading of the retainer agreement indicates that Plaintiffs were not put in such situation. The agreement provides that if plaintiffs waived their right to recover fees in a settlement agreement, they may be obligated to pay them. There is nothing in the retainer requiring the plaintiffs to forgo a settlement altogether; there is simply an incentive – the

11

propriety of which this Court takes no position on – to forgo a settlement that waives attorney fees. This accords with S.M's understanding of the agreement: "It was never my understanding that if an acceptable settlement offer had been proposed by the district that by my accepting that offer, I would be required to pay attorneys' fees." (Id., ¶ 12.) This Court will thus not preclude or limit recoverable fees because of the private agreement between the plaintiffs and their attorneys.

### 3. Rejection of the Settlement Offers

The parents in both cases rejected settlement offers proposed by Evans. This decision has two possible ramifications as it pertains to attorney fees: (1) if the ultimate relief was no more favorable than the offer of settlement, attorney fees and costs cannot be awarded under the IDEA for any time after the offer of settlement, and (2) under this Court's discretion, attorney fees may be reduced based on Plaintiff's relative degree of success after rejecting the settlement offer. Each will be discussed in turn.

#### i. *Elimination of attorney fees*

Title 20, Section 1415(i)(3)(D) of the United States Code provides that attorney fees cannot be awarded:

> in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if –
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the

>    relief finally obtained by the parents is not more favorable to
>    the parents than the offer of settlement.

Evans argues that, under this Section, Plaintiffs should receive no fees because it offered, through the settlement process, all the relief that the IHOs eventually ordered. Thus, this Court must compare the "relief finally obtained" to the "offer[s] of settlement."[5] See 20 U.S.C. 1415(i)(3)(D)(III); B.W. ex rel. K.S. v. New York City Dep't of Educ., 716 F. Supp. 2d 336, 348 (S.D.N.Y. 2010) (quoting N.S. ex rel. P.S. v. Stratford Bd. of Educ., 97 F. Supp. 2d 224, 228 (D. Conn. 2000) ("The correct comparison is between the issues actually litigated, and the results achieved.")

For both S.M. and P.P., Evans made settlement offers after the required resolution sessions. In both cases, Evans offered to pay for several evaluations, including those for occupational, speech, and physical therapy, as a well as a neuropsychological evaluation. The proposed settlement, offered on February 14, 2008, then provides that "upon completion of the evaluations . . . [the parties] shall promptly communicate and set up a CSE meeting at a mutually convenient time as soon as reasonably practical. At the CSE meeting, the parties shall review the evaluations . . . and address any IEP issues that may be impacted by the evaluations data. The CSE shall address modifications to the IEP as appropriate." (S.M. February 14, 2008 settlement offer, ¶ 3; Docket No. 55-9 of 09-CV-686.)

There is a substantially identical offer in P.P.'s proposed settlement agreement,

---

[5]The relief requested by the plaintiffs is not significant for these purposes. To deny fees because the relief requested did not align with the ultimate decision "would impose excessively onerous burdens on litigants seeking fee awards, so that virtually anything less than perfect congruence between the relief requested and the relief obtained would defeat a fee award." G.M. ex rel. R.F. v. New Britain Bd. of Educ., 173 F.3d 77, 83 (2d Cir. 1999).

13

which was tendered on February 21, 2008. In addition, Evans agreed to provide A.P. with "additional education services . . . upon the parents specifying what additional services they desire . . . and the district will agree to and will provide reasonable types and amounts of services." (P.P. settlement offer, ¶ 2; Docket No. 52-9). It also agreed to provide A.P with counseling at least once per week for 30 minutes. (Id., ¶ 5.)

Thus Evans agreed to re-evaluate both children's IEPs and, in A.P.'s case, to provide counseling and even "additional services" if parents specified what services they wanted. Nevertheless, a comparison of the settlement offer to the IHOs' decisions reveals that those decisions were more favorable than that offered in the proposed settlement.

In S.M.'s case, IHO Lazan ordered Evans to provide her son with "physical therapy once a week for the remainder of 2007-2008 through summer 2008 and for 2008-2009 and . . . speech and language therapy once a week for the remainder of 2007-2008 through summer 2008 and for 2009." (Docket No. 51-6 of 09-CV-686.)

IHO Kehoe also ordered that specific relief be provided to A.P. To that end, he ordered Evans to provide: (1) 311 hours of additional special education services; (2) 30 hours of speech therapy; and (3) 20 hours of occupational therapy. (Decision at 19; Docket No. 46-7 of 09-CV-922.)

No such relief is found in the settlement offers. As IHO Kehoe notes, "the District has never agreed to . . . provide specific additional services to the Student," making it questionable whether "the District would actually provide any services once they are out from under the watchful eye of the Parents' attorneys." (IHO Kehoe Decision, at 14, 18.) Accordingly, Evans' argument that attorney fees are barred under Section 1415(i)(3)(D) is rejected. See 20 U.S.C. § 1415(i)(3)(E) (court may award attorney's fees to a "parent who

14

is the prevailing party and who was substantially justified in rejecting the settlement offer").

ii.    *Reduction of attorney fees*

This ruling does not preclude, however, a discretionary reduction in the attorney-fee award if the ultimate relief was similar to that offered by way of settlement. See, e.g., V.G. v. Auburn Enlarged Cent. Sch. Dist., No. 5:06-CV-531(NAM/GHL), 2008 WL 5191703, at *15 (N.D.N.Y. Dec. 9, 2008) (reducing award by 80% because Plaintiff "achieved relatively little after" the settlement agreement was proposed); J.D. ex rel. Davis v. Kanawha Cnty. Bd. of Educ., 571 F.3d 381, 387 (4th Cir. 2009) (affirming, in an IDEA context, a district court's reduction of attorney fees where plaintiffs obtained only partial relief). Indeed, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotation marks omitted).

In that vein, there is significant overlap between the final relief ordered by the IHOs and the settlement agreements proposed by Evans. In S.M.'s case, for example, IHO Lazan ordered Evans to "convene the full CSE" in 15 days from the date of the order to:

> review all evaluations and rewrite the IEP to assess the cause for P.M.'s difficulties in 2007-2008 and provide for an appropriate program for P.M.; such CSE shall develop appropriate and complete goals for the student; [and] such CSE shall determine the propriety of additional occupational therapy and/or assistive technology services for the remainder of 2007-2008, the summer of 2008, and 2008-2009.

(IHO Lazan Decision, at 27.)

IHO Lazan's order is thus similar to Evans' settlement offers in that, as recited above, the settlement offer also called for the parties to a convene a CSE meeting , review

evaluations, and make appropriate changes to the IEPs. This relief – subjecting the IEP

to review and amendment – is significant; it allows the plaintiffs to achieve main goal of this

section of the IDEA: to "engage in a new, dynamic process of designing a specialized

education plan for" their children. N.S. ex rel. P.S. v. Stratford Bd. of Educ., 97 F. Supp.

2d 224, 241 (D. Conn. 2000); see also W.G. v. Bd. of Trustees of Target Range Sch. Dist.

No. 23, Missoula, Mont., 960 F.2d 1479, 1483 (9th Cir. 1992) ("Central among the

safeguards is the process of developing an [IEP] for each child."). Thus, by extension,

Evans' offer to provide this relief is itself significant. Further, there is no dispute that Evans

had begun to implement various aspects of the settlement offer. Physical and occupational

therapy evaluations, for example, were completed, and Evans conducted the Functional

Behavioral Assessment evaluation, as it had promised to do in the settlement offer.

The same is true in P.P.'s case. IHO Kehoe found that Evans had conducted the

independent evaluations in the areas of speech, occupational, and physical therapy. And

A.P.'s parents "ultimately agreed to an IEP with counseling services by the middle of April"

2007. (Kehoe Decision, at 14.) The IHO also noted that the Functional Behavioral

Assessment and the Behavior Intervention Plan "have been completed and are in place."

Id. "Moreover," he continued, "the Student is now placed in an appropriate program

identified through the collaborative efforts of the [school] District and the Parents." (Id., at

17.) Accordingly, in both S.M's and P.P.'s cases, Evans had offered, and was

implementing, many of  the desired changes to the students' education plan.

What is more, in P.P.'s case, although Evans did not specify the precise services

it was willing to provide, it did "agree to provide [reasonable] additional services" upon the

parent's request.

16

On balance then, this Court finds that a reduction in attorney hours after the date on which Evans proposed the settlement agreements is necessary due to the limited degree of success plaintiffs achieved by rejecting that offer and pursuing an administrative hearing. Specifically, this Court finds a 50% reduction to be appropriate in S.M.'s case and a 70% reduction in P.P.'s case. This accounts for the fact that Evans had, before the hearing occurred, effectively conceded that the IEPs and their implementation was deficient and was willing to review and change them (and had begun to do so) according to the children's needs. In P.P.'s case, it also takes into account Evans' willingness to provide additional services. But, it also takes under consideration the fact that the specific additional services ordered by the IHO represents a significant benefit for Plaintiffs, a benefit that was either absent from the settlement offer (in S.M.'s case) or qualified and indefinite (in P.P.'s case).

## C.    Reasonable attorney fees

In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a reasonable fee), with the method developed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974) (considering twelve specific factors to arrive at the "reasonable fee"). Arbor Hill, 493 F.3d at 114. "Relying on the substance of both approaches, [the

17

Case 1:09-cv-00922-WMS-LGF   Document 70   Filed 07/31/13   Page 18 of 29

Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee." Arbor Hill, 493 F.3d at 117.[6]

After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." 493 F.3d at 112, 118.  To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary hourly rate for similar work; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717–19.

****

In S.M's case, attorneys Judith Gerber and Arthur Ackerhalt seek compensation for

---

[6]Although the United States Supreme Court has expressed a preference for the lodestar method in determining attorney's fees in the context of a federal fee-shifting provision, Perdue v. Kenny A., 559 U.S. 542, 130 S.Ct. 1662, 1671–72, 176 L.Ed.2d 494 (2010), the Court did not reject the Second Circuit's approach, and courts in the Circuit continue to use the Arbor Hill method, see Friedman v. Sharinn & Lipshie, P.C., No. 12 CV 3452 FB CLP, 2013 WL 1873302, at *8 n. 11 (E.D.N.Y. Mar. 28, 2013) (collecting cases).

a total of 224.7 hours spent litigating this matter at the administrative level. In addition to Gerber and Ackerhalt, attorneys Claire Fortis, Bruce Goldstein, Patrick McNelis, and William Casey seek compensation for a total of 294.8 hours for time spent litigating in this Court.[7]

Evans objects to .7 hours as relating to time spent for a meeting not ordered by the IHO.[8] Plaintiffs offer no response. Accordingly, those .7 hours will be eliminated from the fee calculation.

Evans also objects to approximately nine other entries, arguing that they reflect excessive billing. After careful review of the remainder of the attorneys' time sheets, however, this Court is satisfied that these hours are reasonable.

As for P.P., Plaintiff's attorneys billed 172.5 hours at the administrative level and 322.3 hours in litigating the fee-issue here. Again Evans objects to several entries relating to time spent for meetings not ordered by the IHO. P.P.'s attorneys agree that certain entries need to be eliminated, but reduces its hours by less than what Evans requests. This Court finds that Plaintiff's reduction adequately accounts for this Court's previous ruling and will therefore reduce the time billed by 4.8 hours (split among several attorneys), as set out in Plaintiff's motion for summary judgment.

Evans objects to only one other group of entries, but this Court finds, as in S.M.'s

---

[7]There is no dispute that Plaintiff's attorneys can recover for their time spent litigating the present fee issue. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183–84 (2d Cir. 1996) ("Attorneys' fees for the preparation of the fee application are compensable") (citing Gagne v. Maher, 594 F.2d 336, 343–44 (2d Cir. 1979); Reiter v. Metro. Transp. Auth., No. 01 Civ. 2762, 2007 WL 2775144 at *17 (S.D.N.Y. Sept. 25, 2007 ) ("It is settled that the time spent on a fee application is itself compensable"); Fink v. City of N.Y., 154 F. Supp. 2d 403, 413 (S.D.N.Y. 2001).

[8]As noted above at p. 7, on Evans' motion to dismiss in P.P.'s case, this Court ruled, in accordance with the IDEA, that fees are not recoverable for any time spent in a meeting or in preparation for a meeting that was not ordered by an IHO.

case, that this time reflects a reasonable amount of hours expended.

However, while Evans does not object to any of the entries related to time spent litigating the fee issue, this Court has an independent duty to review these entries for any apparent billing discrepancies. See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 436 (S.D.N.Y. 2012) (quoting Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009)) (court must examine the time entries to determine whether the hours billed are reasonable, as "[p]laintiffs should receive compensation only for hours that were reasonably expended").  Upon review, this Court takes issue with several parts of Plaintiffs attorneys' fee application. This Court's primary concern lies in the large number of hours Plaintiffs attorneys billed in both cases for the creation, editing, and proofing of documents that, on many issues, are identical. Both these twin cases involve the same law firm, defendant, and legal issues; therefore, the majority of the work done in connection with one case is equally applicable to the other. Yet there is seemingly no accounting for this in the attorneys' time sheets: Plaintiffs attorneys request $81,297.75 in S.M.'s case and a similar $85,485.25 in P.P's case for the federal aspect of their attorney-fee motion.

 Also of concern is the occasional presence of duplicative billing.  Reviewing the list of billed hours shows at least one instance in which two attorneys billed for their mutual attendance of a mediation session when only one would have been needed.

To correct for these deficiencies, an across-the-board reduction of 20% is appropriate for all hours billed in connection with the federal component of each case. See e.g., Kirsh v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's fee reduction of twenty percent "for vagueness, inconsistencies, and other deficiencies in the

billing records"); <u>Hicks v. Vane Line Bunkering, Inc.</u>, 2013 WL 1747806 at *10-11, 2013 U.S. Dist. LEXIS 55043 (S.D.N.Y. Apr. 16, 2013) (twenty percent fee reduction warranted for "unclear and sometimes duplicative billing entries"); <u>Harris v. Fairweather</u>, 2012 WL 3956801 at *8, 2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In light of the . . . vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees sought by twenty percent . . . ."), *adopted by* 2012 WL 5199250, 2012 U.S. Dist. LEXIS 151696 (S.D.N.Y. Oct. 19, 2012); <u>Grievson v. Rochester Psychiatric Ctr.</u>, 746 F. Supp. 2d 454, 469, 471 (W.D.N.Y. 2010) (twenty percent reduction for "excessive, vague, unrelated entries"); <u>Auscape Int'l v. Nat'l Geographic Soc'y</u>, 2003 WL 21976400 at *5, 2003 U.S. Dist. LEXIS 13846 (S.D.N.Y. Aug. 19, 2003) (twenty percent reduction for "inefficiencies due to . . . excessive time expenditures"), *adopted by* 2003 WL 22244953, 2003 U.S. Dist. LEXIS 17020 (S.D.N.Y. Sept. 29, 2003).

Further, although Plaintiffs attorneys seek to supplement their fee motion with additional hours not accounted for in their latest time sheets, they have already billed double what they billed in the underlying administrative action. This Court finds that the hours billed in these cases have reached the limit of reasonableness.

****

As for their rates, while working at the administrative level in 2008, the attorneys in both these cases billed at the following hourly rates:

- Judith Graber: $265.00

- Arthur Ackerhalt: $265.00

- Bruce Goldstein: $285.00

- David Chadwick: $175.00

Different attorneys billed for the fee-issue aspect of the case that proceeded before this Court, and the rates of the attorneys who worked at the administrative level increased. Those rates, per hour, are as follows:

- Arthur Ackerhalt: $295.00

- Bruce Goldstein: $305.00

- Judith Graber: $295.00

- Patrick McNelis: $185.00

- William Casey: $185.00

- Claire Fortin: $90.00

The firm's work on both cases' administrative proceedings began in December 2007, resulting in a  five-and-a-half year interval in which the attorneys have seen no payment for their services. Because payment will be received several years after these services were rendered, compensation based on the attorneys' historic rates would not be equivalent to the amount that they would have received if payment were made promptly. Missouri v. Jenkins, 491 U.S. 274, 283, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).  As such, an adjustment for the delay in payment is appropriate and equitable when determining what constitutes a reasonable fee.  Id. at 284.  Indeed, the Second Circuit has explicitly held that to adjust for delay, the "rates used by the court should be 'current rather than historic hourly rates.'"  Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (other quotation marks omitted)); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); Lochren v. Cnty. of Suffolk, 344 F. App'x 706, 709 (2d Cir. 2009)

(reversing district court for failure to use current rates). As such, to compensate for the years that have passed since the cases' administrative proceedings began, this Court will use Plaintiff attorneys' present rates for purposes of determining reasonableness.

While there are twelve <u>Johnson</u> factors available for consideration when deciding whether a fee is reasonable, it is the duty of this Court to assess the factors that are most applicable to these cases in order to determine the fee's reasonableness, rather than become a "green-eyeshade accountant[ ]" who examines each factor in a formulaic manner. <u>Fox v. Vice</u>, 563 U.S. ----, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011). As such, having already accounted for the degree of success obtained by the attorneys, this Court finds the remaining relevant <u>Johnson</u> factors in these cases to be (1) the time and labor required, (2) the customary hourly rate for similar work, (3) the experience, reputation, and ability of the attorneys, and (4) awards in similar cases. Each will be discussed in turn.

### 1.    Time and Labor Required

The time and labor required in these cases has been significant. Plaintiff's attorneys consistently worked on both the administrative (December 19, 2007 to October 20, 2008) and federal (January 9, 2012 to February 8, 2013) components of S.M.'s case. Thus, Plaintiffs' attorneys have worked approximately 1 year and 11 months on S.M.'s case. Plaintiffs' attorneys in P.P.'s case also consistently worked on both the administrative (December 27, 2007 to December 4, 2008) and federal (October 1, 2009 to April 21, 2010 and January 17, 2012 to February 8, 2013) components of the case. As such, they have worked approximately 2 years and 6 months on P.P.'s case. In light of these circumstances and the hours and percentages to be deducted from their total, this Court finds that the time spent and labor required by Plaintiff attorneys in these cases supports

their fee application.

## 2.    Customary Hourly Rate for Similar Work

Plaintiff's attorneys have provided this Court with evidence of the hourly rates for various attorneys in this area whose primary practice is special education law.  Attorney Goldstein's rate in 2008 was $280/hr.  His present rate is $305/hr.  Attorney Ackerhalt's rate in 2008 was $265/hr.  His present rate is $295/hr.  Attorney Gerber's rate in 2008 was $265/hr.  Her present rate is $295/hr.  All three attorneys' historic and present rates are comparable to those of attorneys H. Jeffrey Marcus and Melinda Saran, who also focus exclusively in special education law and have been practicing for a shorter amount of time. (Saran Aff. ¶¶ 2, 9–10, Docket No. 52-2; Marcus Aff. ¶¶ 2, 17–20, Docket No. 52-4.)  Both attorneys McNelis and Casey bill at $185/hr and were admitted to practice in 2008. Their rate is consistent with the prevailing rates for attorneys of their skill and experience in the area.  Attorney Chadwick's rate in 2008 was $175/hr.  This is comparable to the rate of attorneys McNelis and Casey, whose current skill and experience are comparable with that of attorney Chadwick in 2008.  Attorney Fortin's rate is $90/hr.  As she was not admitted to practice law in New York until 2013, attorney Fortin's rate in 2012 would have been for her services as a paralegal or clerk.  Given her position at that time and Defendant's lack of objection, this Court views this rate as appropriate for her skill level and experience.

## 3.    Experience, Reputation, and Ability of Attorneys

Attorney Goldstein has practiced since 1973.  (Goldstein Aff., ¶ 20; Docket No. 52-1.) He has also devoted the bulk of his career to working special education cases. (Id.) Attorney Ackerhalt has practiced since 1974. (Ackerhalt Aff., ¶ 7; Docket No. 52-5.) He also concentrates primarily in special education cases.  (Id., ¶¶ 11–12.) Attorney Gerber has

practiced since 1985. (Gerber Aff., ¶ 7; Docket No. 52-3.) She has had a bevy of experience with special education cases throughout her career. (Id., ¶¶ 5–21.) Attorneys Chadwick, McNelis, Casey, and Fortin were all relatively new to the legal profession when they worked on these cases.  As such, they had less experience in this area of law.  This inexperience is reflected by their reasonably lower billing rates.

### 4.    Awards in Similar Cases

A relatively recent and similar case in this district is Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F.Supp.2d 509 (W.D.N.Y. 2001). Like this case, Sabatini was litigated by attorneys Goldstein and Ackerhalt. There, Judge Larimer determined that the reasonable rate in the 2000 calendar year was $235/hr for attorney Goldstein and $195/hr for attorney Ackerhalt.  Id. at 512.  Attorney Goldstein's rate in 2012 was $305/hr, an increase of $70/hr over 12 years or $5.83/yr.  Attorney Ackerhalt's rate in 2012 was $295/hr, an increase of $100/hr over 12 years or $8.33/yr.  Given the natural increase in cost-of-living expenses and inflation over that time span and the experience, skill, reputation, and expertise of the attorneys, this Court views these annual increases in both attorneys' rates to be reasonable.  Other courts, in both this and other districts, have granted awards of attorneys' fees for attorneys in the Western District based on rates similar to those billed by Plaintiff's attorneys in this case.  See e.g., M.C. v. Lake George Cent. Sch. Dist., No. 1:10-CV-1068 LEK/RFT, 2013 WL 1814491, at *3–4 (N.D.N.Y. Apr. 29, 2013) ($275/hr and $225/hr appropriate hourly rates for attorneys with comparable, but less experience than Plaintiffs' attorneys); Loretta P. v. Bd. of Educ. of the Cheektowaga Cent. Sch. Dist., No. 04-CV-001A, 2007 WL 1012511, at *7  (W.D.N.Y. Mar. 30, 2007) ($200/hr appropriate hourly rate in 2006 for an attorney with five years of experience in

special education law).

****

Based on this Court's consideration of the relevant <u>Johnson</u> factors and the submissions made by Plaintiff attorneys, this Court considers Plaintiff attorneys' current rates and hours – as adjusted – to be reasonable, equitable, and proper.

## D.    Final amount

### 1.    S.M.

 This Court has determined that a 50% reduction ought to be applied to all hours billed for the administrative action after February 14, 2008, the date at which the initial settlement agreement was offered.  That reduction results in the following figures:

| Attorney | Rate | Non-Reduced Hours | Reduced Hours | Final[9] |
|---|---|---|---|---|
| Ackerhalt | $295/hr | 0 | 17 | $5,015.00 |
| Gerber | $295/hr | 14.6[10] | 87.6[11] | $29,337.75 |
| | | 14.6 | 104.6 | $34,352.75 |

This Court has also determined that a 20% reduction ought to be applied to all hours billed for the federal action in this case.  That reduction results in the following figures:

| Attorney | Rate | Reduced Hours | Final |
|---|---|---|---|
| Ackerhalt | $295/hr | 172.5[12] | $50,772.45 |

---

[9]Travel time was calculated separately at 50% of the respective attorney's hourly rate and then totaled with non-travel time.

[10]13.1 non-travel hours ($3,864.50) and 1.5 travel hours ($221.25).

[11]Accounting for .7 reduction described at p. 19 and 50% overall reduction results in 83.6 non-travel hours ($24,662.00) and 4 travel hours ($590.00).

[12]171.76 non-travel hours ($50,669.20) and .7 travel hours ($103.25).

| | | | |
|---|---|---:|---:|
| Goldstein | $305/hr | 15.7 | $4,788.50 |
| Gerber | $295/hr | 13.4 | $3,953.00 |
| McNelis | $185/hr | 21.7 | $4,014.50 |
| Casey | $185/hr | .6 | $111.00 |
| Fortin | $90/hr | 11.9 | $1,071.00 |
| | | 235.8 | $64,710.45 |

Further, finding no error in its calculation and having no objection from Defendant, this Court will grant Plaintiff costs in the amount of $169.09 for the administrative proceeding and $392.00 for the federal action, for a total of $561.09.

## 2.  P.P.

For P.P., this Court has determined that a 70% reduction will be applied to all hours billed for the administrative action after February 21, 2008, the date at which the initial settlement agreement was offered.  This reduction results in the following figures:

| Attorney | Rate | Non-Reduced Hours | Reduced Hours | Final[13] |
|---|---|---|---|---|
| Ackerhalt | $295/hr | 3.3[14] | 0.0 | $973.50 |
| Goldstein | $305/hr | 0.0 | 13.7[15] | $3,965.00 |
| Gerber | $295/hr | 4.8[16] | 25.6[17] | $9,012.25 |

---

[13]Travel time was calculated separately at 50% of the respective attorney's hourly rate and then totaled with non-travel time.

[14] 3.3 non-travel hours ($973.50).

[15] 1.4 travel hours ($213.50) and 12.3 non-travel hours ($3,751.50).

[16] Accounting for reduction described at p. 19, 4.8 non-travel hours ($1,416.00).

[17] Accounting for reduction described at p. 19, .3 travel hours ($44.25) and 25.6 non-travel hours ($7,552.00).

| | | | | |
|---|---|---|---|---|
| Chadwick | $175/hr | 15.3[18] | 3.4[19] | $2,852.50 |
| | | 23.4 | 42.7 | $16,803.25 |

This Court has also determined that a 20% reduction ought to be applied to all hours billed for the federal action in this case.  That reduction results in the following figures:

| Attorney | Rate | Reduced Hours | Final |
|---|---|---|---|
| Ackerhalt | $295/hr | 169.7[20] | $49,958.25 |
| Goldstein | $305/hr | 11.9 | $3,629.50 |
| Gerber | $295/hr | 10.5 | $3,097.50 |
| McNelis | $185/hr | 35.2 | $6,512.00 |
| Casey | $185/hr | 24.6 | $4,551.00 |
| Fortin | $90/hr | 6.0 | $540.00 |
| | | 257.9 | $68,288.25 |

Again finding no error and having no objection from Defendant, this Court will grant Plaintiff  costs in the amount of $28.81 for the administrative proceeding and $145.00 for the federal action, for a total of $173.81.

## IV.   CONCLUSION

Plaintiffs, S.M. and P.P., are prevailing parties and thus eligible for an attorney-fee award under the IDEA. This Court finds such an award to be appropriate. It also finds the rates requested to be reasonable, but it must reduce the award based on the somewhat limited degree of success obtained and the unnecessary hours billed in the federal action due to the significant overlap between the two cases.

---

[18] 3.2 travel hours ($280.00) and, accounting for reduction described at p. 19, 12.1 non-travel hours ($2,117.50).

[19] .2 travel hours ($17.50) and 2.5 non-travel hours ($437.50).

[20] .7 travel hours ($103.25) and 169.0 non-travel hours ($49,855.00).

28

Last, because Defendant's second motion for summary judgment is essentially the same as its first, the Court will grant Plaintiffs' motion to strike it.

## V.   ORDERS

IT HEREBY IS ORDERED, that Defendant's Motions and Cross-Motions for Summary Judgment in both S.M.'s and P.P.'s case  (Docket Nos. 42, 59, 64 in 09-CV-922 and Docket Nos. 48, 60 in 09-CV-686) are DENIED.

FURTHER, Plaintiffs' Motions for Summary Judgment (Docket No. 52 in 09-CV-922 and Docket No. 55 in 09-CV-686) are GRANTED in part and DENIED in part.

FURTHER, Plaintiffs' Motions to Strike (Docket Nos. 60, 62 in 09-CV-922 and Docket No. 63 in 09-CV-686) are GRANTED.

FURTHER, this Court awards Plaintiff P.P. $85,265.31 and Plaintiff S.M. $99,624.29 in attorney fees and costs.

FURTHER, Plaintiffs' request to supplement their fee application in both cases with additional hours is DENIED.

FURTHER, that the Clerk of Court shall enter judgment in each case as specified.

FURTHER, the Clerk of Court shall close cases numbered 09-CV-686 and 09-CV-922.

SO ORDERED.

Dated:  July 31, 2013
          Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court